NOT FOR PUBLICATION                                              (Doc. Nos. 1, 8, 12)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                            :
DENNIS MASS,                                :
                                            :
                Petitioner,     :       Civil No. 11-cv-2407 (RBK)
                                            :
                v.              :       **OPINION**
                                            :
                                            :
UNITED STATES OF AMERICA,                   :
                                            :
                Respondent.     :
_____         :

**KUGLER**, United States District Judge:

       **THIS MATTER** comes before the Court upon the motion of the Government to dismiss the pending Petition under § 2255. (Doc. No. 8.) Petitioner, proceeding *pro se*, seeks to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 1.) Petitioner also moves for leave to amend or supplement his original § 2255 Petition. (Doc. No. 12.) For the following reasons, the Government's motion to dismiss will be granted, Petitioner's motion for leave to amend will be denied, and the § 2255 Petition will be dismissed.

    **I.**    **BACKGROUND**

       Dennis Mass ("Petitioner") is a federal prisoner currently incarcerated at FCI Fort Dix. On August 7, 2008, Petitioner signed a plea agreement ("Agreement") in which he agreed to plead guilty to conspiracy to distribute and possession with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (Respondent's

Motion to Dismiss ("Resp't's Mot.") at 4.)  Under the Agreement, which contained no stipulations, Petitioner faced a sentence of ten years to life in prison.  (Id.; Petitioner's Motion for Habeas Relief ("Pet'r's Mot.") at 2.)  On November 14, 2008, this Court sentenced Petitioner to a term of imprisonment of 262 months.[1]  (Resp't's Mot. at 4; Pet'r's Mot. at 2.)

     Petitioner filed a timely appeal, arguing (1) that he was inappropriately sentenced as a career offender under the Sentencing Guidelines, and (2) that this Court abused its discretion by not departing downward. (Resp't's Mot. at 6.)  The Third Circuit rejected Petitioner's arguments and affirmed his sentence on June 3, 2010.  United States v. Mass, 383 F. App'x 108 (3d Cir. 2010).  On April 27, 2011, Petitioner filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (the "Petition").

     On March 13, 2012, this Court issued a notice pursuant to United States v. Miller, 197 F.3d 644 (3d Cir. 1999), advising Petitioner that he had 45 days to notify the Court as to whether he wanted to have his Petition ruled on as filed, or whether he wanted to withdraw it and file an all-inclusive petition. (Resp't's Mot. at 6.)  Petitioner did not respond and on May 29, 2012, the Court issued an order directing the Government to respond to Petitioner's original Petition, which it did on July 12, 2012, filing the present motion to dismiss. (Resp't's Mot. at 7.)  On August 27, 2012, Petitioner filed a Reply Brief to the Government's motion as well as a motion

---

[1] The Court found that Petitioner qualified as a career offender within the meaning of U.S.S.G. § 4B1.1, which resulted in a total offense level of 37 and a criminal history category of VI. (Resp't's Mot. at 5.)  After adjusting Petitioner's offense level down three levels to credit his timely acceptance of responsibility, Petitioner's total offense level became 34, with a resulting guideline range of 262 to 327 months imprisonment.  (Id.)  The Court rejected Petitioner's request for an additional downward departure for overstatement of criminal history due to his significant criminal background.  (Id.)

Absent the career offender enhancement, the base offense level, determined by the amount of drugs in this case, was 32.  (Id. at 5 n.2)  Petitioner would also have been eligible for a four point enhancement for being an organizer or leader, which would have resulted in an adjusted offense level of 36.  (Id.)  Applying the three point downward adjustment for timely acceptance of responsibility, Petitioner's offense level would have been a 33, with a criminal history category of V, which would have resulted in a guideline range of 210-262 months.  See U.S. Sentencing Guidelines Manual Ch. 5, Pt. A (2008).

for leave to amend/supplement his original Petition.  (See Pet'r's Opp'n (Doc. No. 11); Pet'r's Mot. to Amend (Doc. No. 12).)

## II.   LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner may move to vacate, set aside or correct a sentence on the ground that the sentence was imposed in violation of the Constitution or federal law, the sentencing court was without jurisdiction, or the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack.  Generally the district court shall grant a hearing to determine the issues and make findings of fact and conclusions of law.  § 2255(b).  However, if the motion, files, and records of the case conclusively show that the prisoner is not entitled to relief, the petition will be denied.  Id.; see also United States v. McCoy, 410 F.3d 124, 131-32 (3d Cir. 2005) (holding a district court must grant an evidentiary hearing unless the record before it conclusively showed the petitioner was not entitled to relief).  A hearing need not be held if the petition raises no legally cognizable claim, or if the factual matters raised by the petition may be resolved through the district court's review of the motions and the records in the case, or, in some circumstances, if the court, in its discretion, finds the movant's claims to be too vague, conclusory or palpably incredible.  United States v. Costanzo, 625 F.2d 465, 470 (3d Cir. 1980) (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)).

The Government's motion to dismiss is considered according to the standard set forth by Federal Rule of Civil Procedure 12(b)(6).  See Fed. R. Civ. P. 81(a)(4) (applying the Federal Rules of Civil Procedure to "proceedings for habeas corpus…to the extent that the practice in those proceedings: (A) is not specified in [] the Rules Governing Section 2255 Cases; and (B) has previously conformed to the practice in civil actions").  In deciding a motion under 12(b)(6),

the reviewing court must consider a petitioner's allegations and all reasonable inferences drawn therefrom in the light most favorable to the petitioner.  Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001).  If, after considering the petitioner's allegations, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," the court may dismiss the petitioner's § 2255 petition.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

The Federal Rules of Civil Procedure also apply to motions to amend habeas corpus petitions.  United States v. Duffus, 174 F.3d 333, 337 (3d Cir. 1999) (citing Riley v. Taylor, 62 F.3d 86, 89 (3d Cir. 1995)).  Under the Federal Rules of Civil Procedure, leave to amend pleadings shall be "freely give[n]" when "justice so requires."  Fed. R. Civ. P. 15(a)(2).  In Foman v. Davis, 371 U.S. 178 (1962), the Supreme Court articulated the liberal policy of allowing amendments underlying Rule 15(a) as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

Id. at 182; see also Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).  As is the case with ordinary civil complaints, in habeas corpus petitions, amendments made after the statute of limitations has run must relate back to the date of the original pleading, and only do so if the original and amended pleadings arise out of the same conduct, transaction, or occurrence.  Mayle v. Felix, 545 U.S. 544, 655 (2005) (citing Fed. R. Civ. P. Rule 15(c)(2)).

In determining if a proposed amendment should be denied based on futility grounds, courts employ the "same standard of legal sufficiency as applies under [Federal] Rule [of Civil

4

Procedure] 12(b)(6)." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 175 (3d Cir. 2010) (citations omitted); see also Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000) ("An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted.")  As described above, under Rule 12(b)(6), a motion to dismiss may be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  While "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  Id. at 555; see also Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

**III.     DISCUSSION**

    **A.  Relation Back of Petitioner's Motion for Leave to Amend**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") states that—absent new evidence or a new rule of constitutional law—§ 2255 motions must be filed within one year of the date on which the conviction became final.  28 U.S.C.A. § 2255(f)(1).  This one-year statute of limitations bars new § 2255 motions, as well as amendments of existing motions to add new claims or legal theories after the one-year period has expired.  See United States v. Thomas, 221 F.3d 430, 431 (3d Cir. 2000).

Although amendments of existing motions are ordinarily barred by the one-year statute of limitations, this Court has the authority to "permit an amendment which clarifies or amplifies a claim or theory in a timely filed § 2255 petition after the AEDPA's one-year period of limitations has expired."  Id. at 438.  Amended pleadings "relate back" to the date of the original pleading if they share a common core of operative facts, such that the opposing party has "fair notice of the general fact situation and the legal theory upon which the amending party

proceeds." See Glover v. F.D.I.C., 698 F.3d 139, 145-46 (3d Cir. 2012) (citation omitted) (describing the standards for "relation back" under Rule 15(c)); see also United States v. Hernandez, 436 F.3d 851, 858 (8th Cir. 2006) (where the facts in petitioner's original claim relating to the admission of evidence "were not such that would put the opposition on notice that cross-examination of witnesses was at issue," the court held that the claims were "not similar enough to satisfy the 'time and type' test, nor [did] they arise out of the same set of operative facts.")  Thus, where "the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." Mayle, 545 U.S. at 664; see also Hodge v. United States, 554 F.3d 372, 378 (3d Cir. 2009) ("[T]he Court should [ask]—as we ask now—whether both the ineffective assistance claim in [Petitioner's] Supplemental Memorandum and the right-to-appeal claim in his original 2255 motion 'are tied to a common core of operative facts.'") (quoting Mayle, 545 U.S. at 664).

Here, there is no question that Petitioner filed his motion for leave to amend after the expiration of AEDPA's one-year statute of limitations.  Petitioner's conviction became final on June 3, 2010, and thus the one-year limitations period expired on June 3, 2011.  Although Petitioner's initial Petition, filed on April 27, 2011, was timely, his motion for leave to amend filed on August 27, 2012, was not.  Accordingly, the four new grounds for relief advanced in Petitioner's motion for leave to amend are only timely if they "relate back" to those put forth in his original Petition.

In the his original Petition, Petitioner argues that (I) this Court lacked jurisdiction to impose an enhanced term of imprisonment based on his prior criminal history because the Government failed to give him timely notice of enhancement under 21 U.S.C. § 851, (II) he was denied effective assistance of counsel because his attorney failed to object to his designation as a

career offender pursuant to U.S.S.G. § 4B1.1, and (III) he was denied effective assistance of counsel because his attorney failed to object to his designation as an organizer or leader in the offense conduct pursuant to U.S.S.G. § 3B1.1(a). (Pet'r's Mot. at 3, 9.)

Petitioner's motion for leave to amend his original Petition sets forth four additional grounds for relief also based on his counsel's alleged ineffective assistance: (I) Petitioner was not advised that by entering a plea of guilty, he waived his right to have a jury determine the identity of the controlled substance beyond a reasonable doubt, (II) despite his requests, his attorney failed to object to the pre-sentence report, and request a variance from the applicable guideline range, (III) his attorney did not insist that the Government meet the burden allegedly required to use the modified categorical approach outlined in Taylor v. United States, 495 U.S. 575, 602 (1990), in determining whether his prior convictions qualified for enhancement, and (IV) his attorney failed to object to the Government's use of facts about his prior convictions that were not elements of the offense. (Pet'r's Mot. to Amend at 5, 11, 14, 19.)

The Court finds that claims III and IV in Petitioner's motion for leave to amend relate back to his original April 27 Petition. While perhaps expanding rather judiciously on his previous ineffective assistance of counsel claims, these allegations in the motion for leave to amend relate back to claim II in the original Petition. The amendments deal directly with counsel's alleged failure to object to the use of Petitioner's prior criminal records, and the manner of the use of those records, during Petitioner's sentencing. However, for the reasons stated below, the Court will deny Petitioner's motion for leave to amend, as these amendments would be futile. See Foman, 371 U.S. at 182 (holding that leave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment.)

Claims I and II in the motion for leave to amend do not relate back to the original Petition. In claim I Petitioner raises, for the first time, his contention that the information counsel provided him during his guilty plea was inadequate, and thus his plea was not knowing or voluntary. (Pet'r's Mot. to Amend at 5, 9.) This differs in both time and type from Petitioner's original grounds for relief, and despite his attempt at framing the issue in relation to sentencing, does not involve the same set of operative facts. See Mayle, 545 U.S. at 644. Similarly, in claim II he avers that prior counsel did not challenge the application of the sentencing guidelines, on policy grounds, despite Petitioner's requests during sentencing. (Id. at 11-13.) This claim relates to Petitioner's sentencing, to be sure, but it is a wholly different claim from the others, involving only Petitioner's arguments concerning the constitutionality of applying the sentencing guidelines to career offenders generally.[2] Furthermore, Petitioner has not suggested that he could not have asserted these claims in his original petition, or in response to this Court's notice of March 3, 2012. See United States v. Duffus, 174 F.3d 333, 338 (3d Cir. 1999) ("[Petitioner] was aware of the facts to support his claim before his conviction became

---

[2] Even if the Court were to find that claim II related back, it would still deny Petitioner's motion for leave to amend the original Petition with this claim. First, Petitioner's counsel did object to the classification of Petitioner as a career offender, (see Ex. B to Resp't's Mot., Transcript of Sentencing Hearing ("Tr.") at 3:17-4:9), and then made an impassioned argument, albeit unsuccessfully, for why the Court should have departed downward from the guidelines range in spite of Petitioner's career offender status. (See id. at 6:6-8:2) In other words, counsel did what Petitioner asked of him—he argued that the guidelines range for career offenders should not be applicable to Petitioner based on his circumstances. It can hardly be said that this was ineffective performance based on Petitioner's request.

Secondly, while the Court is required to consider the "relevant § 3553(a) factors," it ultimately is called on to "consider[] the Guidelines range, weigh[] the relevant § 3553(a) factors, and exercise[] discretion in imposing a sentence." United States v. Charles, 467 F.3d 828, 831 (3d Cir. 2006). Here the court considered all of those factors, and after doing so chose to sentence Petitioner at the bottom of the guidelines range. (See Tr. at 15-19.) Even if Counsel were ineffective for failing to make an objection to the use of the career offender enhancement generally, the Third Circuit has upheld the use of that enhancement so long as the sentencing Court properly considers the relevant sentencing factors. Charles, 467 F.3d at 833 (holding that the district court reasonable exercised its discretion where it considered the relevant § 3553(a) factors, the defendant's personal circumstances, and acknowledged that the guidelines are advisory, and sentenced the defendant to the maximum under the guidelines range). Because this Court exercised reasonable discretion in sentencing Petitioner, he has not offered any allegations which suggest that he suffered prejudice under the second prong of Strickland test, discussed infra.

final.  In these circumstances, an amendment to introduce the new theory into the case that his trial attorney had been ineffective for failing to move to suppress the cocaine, is simply not acceptable.")

Accordingly, the Court will proceed to analyze claims (III) and (IV) in Petitioner's motion to amend under the Rule 15(a)(2) standard, and will deny petitioners motion for leave to amend as to amended claims (I) and (II).

### B.  Jurisdiction to Impose Enhancement (Original Petition, Claim I)

Petitioner argues that this Court was without jurisdiction to impose the career offender enhancement because the Government failed to notify him of its intention to use Petitioner's prior criminal convictions to seek an enhanced term of imprisonment.  (Pet'r's Mot. at 5.)  Under 21 U.S.C. § 851,

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

However, "notice is required only if the government seeks a sentence beyond the statutory maximum, and is not required if the government requests the court to sentence the defendant as a career offender under § 4B1.1."  United States v. Washington, 358 F. App'x 309, 314 (3d Cir. 2009) (citing United States v. Day, 969 F.2d 39, 48 (3d Cir. 1992)).

As the Court imposed a sentence consistent with § 4B1.1, and the Government did not seek a sentencing enhancement under § 851(a)(1), this argument is without merit.  Accordingly, the Court will grant the Government's motion to dismiss as to this claim.

9

### C. Effectiveness of Counsel

Petitioner also argues that his Sixth Amendment right to effective assistance of counsel was violated. To establish such a violation:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
>
> Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Grant v. Lockett, 709 F.3d 224, 232 (3d Cir. 2013) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). As to the first prong of the Strickland test, the burden is on the movant to show that his counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms." United States v. Saunders, 165 F.3d 248, 250 (3d Cir. 1999) (citing Strickland, 466 U.S. at 688). In this context, scrutiny of counsel's conduct must be "highly deferential." Strickland, 466 U.S. at 689. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. Accordingly, analysis of this first prong must proceed with the "strong presumption" that the conduct in question fell within "the wide range of reasonable professional assistance," leaving it to the movant to overcome that presumption. Id. A petitioner is actually prejudiced if counsel's errors were so serious, they deprived the defendant of a fair, reliable sentence. Id.

As a practical matter, a court deciding an ineffective assistance of counsel claim may begin (and potentially end) its analysis with either the first or second prongs set forth in Strickland. Id. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.")

Petitioner claims that he received ineffective assistance of counsel because his attorney failed to object to the career offender enhancement based on the government's alleged failure to file notice pursuant to § 851, failed to object to the organizer/leader enhancement, failed to insist that the Government meet the burden allegedly required to use the modified categorical approach in determining whether his prior convictions qualified for enhancement, and failed to object to the Government's use of facts about his prior convictions that were not elements of the offense. (Pet'r's Mot. at 3, 9; Pet'r's Mot. to Amend 14, 19.) These claims fail as a matter of law, and additionally a simple review of the transcript from the sentencing proceeding reveals that these issues were raised by counsel and considered by the Court.

### 1. Prior counsel failed to object to his designation as a career offender pursuant to U.S.S.G. § 4B1.1 (Original Petition, Claim II)

Though Petitioner relies on the notion that a § 851 notice of enhancement was required in this case to demonstrate that his attorney was ineffective, that cannot be the basis for an ineffective assistance claim where the Government was not in fact required to file such a notice. As discussed above, notice was not required because the Court imposed a sentence consistent with § 4B1.1, and the Government did not seek a sentencing enhancement under § 851(a)(1). Notably however, Petitioner's counsel did object to Petitioner's career offender status at his sentencing. (See Tr. at 3:10-4:9 (arguing that Petitioner's resisting arrest/eluding conviction should not have been deemed a crime of violence); id. at 6:6-8:2 (arguing that Petitioner's criminal history category overstated the serious of his prior convictions and his likelihood of committing future crimes).) Yet, an objection based on the government's failure to give notice under § 851(a)(1) would have been meritless. As such, the Court finds that, for failing to make such an argument, counsel's performance did not "[fall] below an objective standard of reasonableness under prevailing professional norms," and was thus not ineffective. Saunders,

11

165 F.3d at 250 (citing Strickland, 466 U.S. at 688).  Accordingly, the Court will grant the Government's motion to dismiss this claim in the original Petition.

> **2. Prior counsel failed to object to his designation as an organizer or leader in the offense conduct pursuant to U.S.S.G. § 3B1.1(a) (Original Petition, Claim III)**

Petitioner's third claim in his original Petition is baseless, as his categorization as an organizer or leader in the offense was irrelevant to the guidelines calculation once he was categorized as a career offender.  When Petitioner was categorized as a career offender, his offense level, as calculated under § 4B1.1(b) was 37.  (Resp't's Mot. at 14.)  Because this was greater than the offense level otherwise applicable to Petitioner, without or without a four-level enhancement for being an organizer or leader, the offense level calculated under the career offender table had to apply.[3]  (Id. at 14-15.)  Though the organizer/leader enhancement was mentioned briefly at the beginning of sentencing, all parties acknowledged that it was ultimately rendered moot by the Court's determination that Petitioner was a career offender.  (See Tr. at 2:15-24 ("THE COURT: I know we have some issues here on the four level enhancement for being an alleged organizer, together with I guess the career offender status. And we'll resolve that briefly. … MR. BAKER: And as Mr. Skahill said in his brief and I agree that if the court finds it's a career criminal, I know it moots out a four level enhancement.").)  Any further objection to the organizer/leader enhancement would have been frivolous, and the Court finds that counsel's performance was not deficient for failure to make such an argument.  The Court will grant the Government's motion to dismiss this claim in the original Petition.

---

[3] If Petitioner had not been categorized as a career offender, and the enhancement had been applied, his adjusted offense level would have only been 36.  (Resp't's Mot. at 15 n.6.)

### 3. Prior counsel insist that the Government meet the burden allegedly required to use the modified categorical approach outlined in <u>Taylor v. United States</u> (Motion to for Leave to Amend, Claim III)

Petitioner's arguments that his attorney did not insist that the Government meet the burden allegedly required to use the modified categorical approach in determining whether his prior convictions qualified for enhancement is frivolous, as there is no evidence that this Court even applied the modified categorical approach.  <u>See generally</u> <u>United States v. Abbott</u>, 748 F.3d 154, 157 (3d Cir. 2014) (describing the "categorical approach" as "generally require[ing] the trial court to look only to the fact of conviction and the statutory definition of the prior offense" not "the particular facts underlying those convictions" when a sentencing court must decide if a prior felony qualifies for an enhancement under the sentencing guidelines) (internal quotation marks and citations omitted) (quoting <u>Taylor</u>, 495 U.S. at 600, 602); <u>Abbott</u>, 748 F.3d at 157 (explaining that in a "narrow range of cases" a sentencing court "may look beyond the elements of a prior conviction to decide if it can serve as [sentencing guidelines] predicate offense," and noting that "[t]his alternative method has become known as the 'modified categorical approach.'") (internal citation omitted) (citing <u>Taylor</u>, 495, U.S. at 602).

At the outset, the Court notes that Petitioner's claim relates only to this Court's consideration of Petitioner's prior drug conviction during sentencing.  The Third Circuit already addressed Petitioner's argument on appeal that his prior resisting arrest conviction was a "crime of violence" for purposes of the Sentencing Guidelines, and relied on <u>Taylor</u>'s categorical approach in reaching its conclusion.  <u>See</u> <u>Mass</u>, 383 Fed. App'x at 111-12.

The sentencing record is devoid of any indication that the Court applied the modified categorical approach.  The sum total of the Court's mention of the prior controlled substance offense before choosing to categorize Petitioner as a career offender is limited to a handful of lines in the transcript.  (<u>See</u> Tr. at 3:10-16 ("THE COURT: … The Probation Office is relying on

13

the prior conviction for the narcotics and the eluding convictions.  Correct?"); id. at 4:17-19 ("MR. SKAHILL: … It's the controlled substance case, as well as the resisting arrest case"); id. at 5:10-13 ("THE COURT: … [T]here are predicate offenses sufficient for a career offender status.  I'm willing to reject the objections and we will adopt the Probation Office's determination of career offender status in this case.").)  There is no evidence, whatsoever, suggesting that the Court was improperly applying the modified categorical approach.  As such, counsel could not have been deficient for failing to object to this fact.

Additionally, Petitioner's prior controlled substance crime is the very type of offense that the modified categorical approach would apply to.  On reviewing N.J.S.A. 2C:35-5, "[n]o one could know, just from looking at the statute, which version of the offense [Petitioner] was convicted of."  Descamps v. United States, — U.S. —, 133 S.Ct. 2276, 2284 (2013); see id. ("[W]hen a statute so 'refers to several different crimes,' not all of which qualify as [sentencing guidelines] predicate, a court must determine which crime formed the basis of the defendant's conviction.") (quoting Nijhawan v. Holder, 557 U.S. 29, 35 (2009)).  The statute contains over fourteen possible different crimes of which Defendant could have been convicted of.  See 2C:35-5(b)(1)-(14).  Due to the divisible nature of 2C:35-5, the Court may examine the terms of the indictment to determine what crime Petitioner was previously convicted of.  Shepard v. United States, 544 U.S. 13, 26 (2005) ("We hold that enquiry under [the sentencing act] to determine whether a plea of guilty to [a crime] defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this

14

information.")  This further supports the Court's finding that Petitioner's counsel was not deficient for failing to object to the alleged use of the modified categorical approach.

Yet, the Court did not need to apply the modified categorical approach in the first place. Based on any reading of the elements of the statute in Petitioner's prior conviction, it was apparent that the conviction qualified him as a career offender.  See Abbott, 748 F.3d at 157 (citing Descamps, 133 S.Ct. at 2283).  The prior conviction upon which the Court relied was an applicable controlled substance offense regardless of which underlying crime was the basis for Petitioner's conviction.  Section 4B1.1(a) of the United States Sentencing Guidelines states,

> A defendant is career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

A "controlled substance offense" is defined as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

§ 4B1.2(b).  Petitioner previously pleaded guilty to conspiracy and possession with intent to distribute a controlled dangerous substance, in violation of N.J.S.A. 2C:5-2 and 2C:35-5.  (Ex. A to Resp't's Resp. to Pet'r's Mot. to Amend ("Resp't's Resp."), Prior Controlled Substance Guilty Plea ("Prior CDS Plea").)  New Jersey Statute 2C:35-5(a) provides that "it shall be unlawful for any person knowingly or purposely:  (1) To manufacture, distribute or dispense, or to possess or have under his control with intent to manufacture, distribute or dispense, a controlled dangerous substance or controlled substance analog."  Importantly, the lowest level offense which Petitioner could have pleaded guilty to under that statute is a crime of the fourth degree.  See id.

15

According New Jersey law, a crime of the fourth degree is punishable by a term of imprisonment "for a specific term which shall be fixed by the court and shall not exceed 18 months." 2C:43-6(a)(4).[4] Even under the most generous reading of the statute, construing Petitioner's plea as encompassing the least culpable conduct, he was at a minimum previously convicted of possession with intent to distribute a controlled substance and faced a prison term of up to one and a half years. Based on this, the Court observes even more support for its finding that Petitioner's counsel was not deficient for failing to make an objection. Additionally, this strongly suggests that Petitioner was not prejudiced by his counsel's failure to make such an objection, because the Court would have reached the same conclusion with regard to Petitioner's career offender categorization whether or not it had explicitly applied the formal categorical or modified categorical approach.

Finally, the Court notes that while some circumstances of Petitioner's prior convictions were discussed in minor detail, those remarks were made in the context of prior counsel's attempt to argue for a downward departure on Petitioner's behalf. (See Tr. at 6:6-22 ("MR. BAKER … The first is the 2001 conspiracy to distribute a controlled dangerous substance which the Court was aware when Mr. Skahill submitted the indictment was a third degree less than an ounce of the controlled substance. A small amount, approximately 13 grams. The case involved four men in a vehicle having 13 grams of heroin and they all, at least Mr. Mass admitted there

---

[4] In point of fact, the court in Petitioner's prior plea sentenced him to a term of three years of imprisonment. (See Prior CDS Plea.) This clearly suggests that he was actually guilty of a crime of the third degree under New Jersey law. (See id. (charging Petitioner with "unlawfully and knowingly or purposely possess[ing] with the intent to distribute a controlled dangerous substance, to wit; less than ½ ounce of heroin contrary to the provisions of N.J.S. 2C:35-5a(1)"); see also 2C:35-5(b) ("Any person who violates subsection a. with respect to: (1) Heroin … in a quantity of five ounces or more including any adulterants or dilutants is guilty of a crime of the first degree."); 2C:35-5(b)(3) ("A substance referred to in paragraph (1) of this subsection in a quantity less than one-half ounce including any adulterants or dilutants is guilty of a crime of the third degree"); 2C:43-6(a)(3) ("In the case of a crime of the third degree, for a specific term of years which shall be fixed by the court and shall be between three years and five years").)

16

was a conspiracy to distribute that heroin. … [Counsel is] arguing in the overall relative scheme of his past offenses, this offense is of a relatively minor nature."); id. at 12:9-22 ("MR. SKAHILL: … This is a defendant who has three felony convictions. … These are felony convictions for drugs, resisting arrest, and eluding."); id. at 13:3-6 ("MR. SKAHILL: … I think it's particularly noteworthy and the Court can see this from my submission that the defendant pled to one of these offenses on August 13th and two days later he's arrested in a car for a heroin conspiracy."); id. at 15:17-23 ("THE COURT: … Well, as to the defendant's motion in this case for downward departure … whether or not his criminal history substantially over-represents the serious of his actual conduct. … I'm going to deny the application and I'll put the reasons on the record."); id. at 17:1-8 ("THE COURT: … He was arrested on a [controlled dangerous substance] case six months after resisting arrest.  Clearly the system hasn't gotten through to this individual … I don't find that his criminal history significantly over-represents the seriousness of his conduct and future threat to society and deny you application by defense counsel.").)  To the extent that Petitioner argues this discussion indicates that the Court engaged in the modified categorical approach, there is no evidence suggesting such a connection and the Court rejects the argument as meritless.  Rather, the transcript makes clear that Petitioner's counsel wanted the Court to go beyond the basic elements of the crime, which were clearly enough for classification as a career offender, in an attempt to mitigate the harshness of Petitioner's sentence.

     Because Petitioner has put forth no grounds for relief which would survive a motion to dismiss in this amended ineffective assistance of counsel claim, the Court will deny his motion to amend his original Petition with claim III from the motion for leave to amend.

### 4. Prior counsel failed to object to the Government's use of facts about his prior convictions that were not elements of the offense (Motion for Leave to Amend, Claim IV)

Petitioner claims that his counsel's failure to object to the Government's use of facts about his prior convictions that were not elements of the offense deprived him of ineffective assistance. However, based on the same reasons set forth in discussion of claim III from the motion for leave to amend, supra, the Court finds that Petitioner cannot state a claim for ineffective assistance on this basis. The Court was not missing "the requisite element needed for enhancement," (see Pet'r's Mot. to Amend at 21), as it did not mistakenly apply the modified categorical approach where a categorical approach would have yielded a different result. There is no indication on the record that the formal categorical approach was not applied. The prior crime for which Petitioner was convicted, even in its least culpable iteration, was sufficient to satisfy the career offender requirements in § 4B1.1. Even if the modified categorical approach had been applied, based on the divisible nature of the statute in which the offense was found, it would have been appropriate under the circumstances. Counsel could not have been deficient for failing to object to an issue that was not actually present during the sentencing proceedings. Nor was the discussion of the facts of his prior conviction relevant to Petitioner's present claim, as it occurred entirely within the context of counsel's request for downward departure for Petitioner.

For the reasons expressed above, claim IV in the motion for leave to amend would not survive a motion to dismiss, and is thus futile. The Court will deny Petitioner's motion to amend his original Petition with this claim.

The Court finds nothing in the record indicating that Petitioner's counsel was ineffective for the any of the reasons put forth by Petitioner in his several claims. For this reason, the Court will grant the Government's motion to dismiss the remaining claims in the original Petition, and

will deny Petitioners motion for leave to amend his original Petition.  All of Petitioner's claims will be dismissed.

## IV.     CERTIFICATE OF APPEALABILITY

An appeal may not be taken from a final order in a § 2255 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Here, the Court denies a certificate of appealability since jurists of reason would not find it debatable that Petitioner failed to make the requisite showing.

## V.     CONCLUSION

For the reasons stated above, the Court finds that no evidentiary hearing is necessary.  The Government's motion will be **GRANTED** and the Petitioner's § 2255 Petition will be **DISMISSED**.  Petitioner's motion to amend the original Petition is also **DENIED**.  No certificate of appealability will issue.  An appropriate Order will follow.


Dated:  11/20/2014                                                                              s/ Robert B. Kugler
                                                                                                   ROBERT B. KUGLER
                                                                                                   United States District Judge